ABRAHAM V. VAN FLEET AND JOHN T. BIRD, ESQS.,
VICE-CHANCELLORS.

---

THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

*v.*

JOSEPH M. EVERETT.

For a valuable consideration lands were conveyed to C. in trust for E., with a provision that C. should convey the lands to any one designated by E., either by a writing executed during her lifetime or by a will after her death. C. died without having exercised the power, and thereupon E. verbally requested C.'s heir at common law to convey the premises to herself, which was accordingly done. Afterwards, E., for a valuable consideration, conveyed the premises to the complainants' mortgagor, through whom they now claim title. —*Held*, that this court would aid the execution of the power, which was only formally defective, and would perpetually enjoin E.'s heir-at-law from prosecuting an ejectment to recover the premises.

---

On bill for relief. On final hearing on pleadings and proofs.

345

*Mr. F. G. Burnham,* for complainant.

*Mr. William Clark,* for defendant.

THE CHANCELLOR.

The bill is filed to restrain the defendant from prosecuting an action of ejectment to recover the possession of land in Middlesex county, to which he claims title under the provisions of a trust-deed from Joseph McChesney to Doctor Charles G. Mc-Chesney, dated September 5th, 1853, and, if necessary, to establish the title of the complainant under a conveyance of the property to Elizabeth M. Everett under that deed, the complainant's title being derived from her through foreclosure proceedings upon a mortgage given by her grantee.

The deed from Joseph McChesney to Doctor McChesney recited that Mrs. Everett, one of the children of the grantor, had paid and discharged out of her own funds sundry debts and claims against her father, and had laid out and expended from time to time large sums of money in and about his support and maintenance, and had also agreed to and with him to board, clothe and maintain him in a comfortable manner for and during the term of his natural life, and that it was the wish, purpose and intent of the grantor to settle and secure the real estate and premises described in the deed to and for her use and benefit as thereinafter set forth ; and the deed thereupon witnessed that the grantor, in order to carry into effect such wish, purpose and intent, and in consideration of the premises and the natural love and affection which he had for his daughter, Mrs. Everett, and also in consideration of $1, granted, bargained, sold, aliened, released, conveyed and confirmed to Charles G. McChesney, his heirs and assigns, the property in question, a tract of forty-four acres, to the use of the grantee, his heirs and assigns forever; but, nevertheless, upon the trust and to and for the several uses, intents and purposes thereinafter expressed, limited and declared, and to no other use, purpose and intent whatever ; that is to say, upon the trust that the grantee, his heirs and assigns, should and would grant, bargain, sell, assign, transfer and convey the premi-

ses, or any and every part and parcel thereof, unto such person or persons and to and for such uses, purposes, estates and interests, and in such parts, shares and portions, form and manner as Mrs. Everett might at any time during her natural life, and, notwithstanding any coverture, by writing under her hand and seal, direct and appoint, and in trust that the grantee, his heirs and assigns, before and until such direction and appointment should be made, and for and at all times during the natural life of Mrs. Everett, should and would permit and suffer, authorize and empower her to use, possess, occupy and enjoy the premises and every part and parcel thereof, and the rents, issues and profits thereof to have, take and receive to and for her own sole and separate use and benefit, free from the debts, control or engagements of her then present or any future husband; and in trust from and immediately after her decease to grant, bargain, sell, release, convey, confirm and dispose of the premises and any and every part and parcel thereof unto such person or persons and to and for such uses, purposes, estates and interests, and in such parts, shares and portions, form and manner as she at any time during her life, notwithstanding any coverture, should by her last will and testament in writing, duly executed according to law, or any writing purporting to be her last will and testament or in the nature thereof, and executed as a will, direct, limit, give and appoint the same or any part thereof; and, in default of such direction, limitation and appointment, then in trust for her right heirs; provided always, nevertheless, that it should and might be lawful to and for the grantee, his heirs and assigns from time to time, in the first place, to deduct, retain and re-imburse unto himself and themselves, out of the rents, issues and proceeds of the said premises, all such costs, charges and expenses as he or they or any of them should or might sustain, expend, pay or be put unto in and about the performance of the trust thereby in them reposed, or in any manner concerning the same.

It may be stated that in 1857 the grantor died, leaving a will dated July 22d, 1850, and a codicil thereto dated June 25th, 1852, by which will and codicil he gave to Mrs. Everett all his estate, real and personal.

Doctor McChesney died in 1863, leaving no lineal descendants. His heir at the common law was Stephen McChesney, the oldest son of his deceased brother John. The premises had not, nor had any part thereof, been conveyed away when Doctor McChesney died.

After the death of Doctor McChesney, and on or about January 6th, 1864, Mrs. Everett (she being then a widow), being desirous of acquiring the legal title to the property, under the advice and direction of her counsel requested the heirs-at-law of Doctor McChesney to convey the premises to her, so that she might become seized of them by a good and perfect legal title in fee simple absolute. In compliance with that request Stephen F. McChesney (the heir at common law) and others, heirs-at-law of Doctor McChesney, by a deed dated January 6th, 1864, and acknowledged January 6th, 1865, conveyed the property to her in fee to her own use. The deed declared that the property was the same conveyed by Joseph McChesney to Doctor McChesney by the before-mentioned deed, in trust for Mrs. Everett, as particularly set forth in the deed; and, that Doctor McChesney having died holding the title in trust under that deed, the grantors, his heirs, executed the conveyance to her for the purpose of vesting in her the legal title of the property.

The executrix of Jonathan E. McChesney, one of the brothers of Doctor McChesney, also made a conveyance to Mrs. Everett for the same purpose. The last-mentioned conveyance was dated January 9th, 1865, and was made under a power contained in the will of Jonathan E. McChesney to convey all the real estate of the testator.

It appears that certain of the heirs-at-law of Doctor McChesney did not join in the conveyance to Mrs. Everett. On January 28th, 1865, Mrs. Everett conveyed the property to George Farr in fee for his own use, for the consideration of $11,000, subject to certain mortgages—one for $300 and another for $600, given by Joseph McChesney in his lifetime, and the others given by Mrs. Everett, one for $500 and the other for $1,000. The principal of those mortgages, amounting in all to $2,400, constituted a part of the consideration of the conveyance. On February 10th,

1871, Farr mortgaged the property to the complainant to secure the payment of $20,000. Under foreclosure proceedings in this court upon that mortgage, it was decreed that a part of the property be sold to raise and pay to the complainant $21,400, besides costs and interest. The part so ordered to be sold was purchased by the complainant for $8,850, and was conveyed to it accordingly by the sheriff of Middlesex county by deed dated September 23d, 1873. Immediately afterwards the complainant entered into possession and has held such possession ever since. Mrs. Everett died February 28th, 1883. In May, 1884, her son and only child, Joseph M. Everett, brought an action of ejectment in the supreme court against William D. Perrine, who then held the property so bought by the complainant, as tenant of the complainant, to recover possession of the premises, and this suit was brought to restrain him from prosecuting that action and to establish the complainant's title.

At the death of Doctor McChesney (who died intestate) the title of the property descended to Stephen F. McChesney, who was his heir at the common law, Stephen being the oldest son of Doctor McChesney's deceased oldest brother, John C. McChesney. At Mrs. Everett's request, Stephen, with other heirs-at-law of Doctor McChesney, conveyed the property to her in order that she might have the legal title to her own use. This was an effectual transfer of the title to her in equity. The execution of the power was defective in one, and only in one, respect, viz., the form in which the request for a conveyance was made. The trust-deed provided that the request should be in writing. It appears to have been oral merely. Stephen testifies that he executed the deed to Mrs. Everett at her request. Equity will, in a proper case, aid the defective execution of a power by supporting, correcting and completing it. Here the conveyance to Farr was in consideration of $20,000. Moreover, it appears clearly from the trust-deed itself that the conveyance to Doctor McChesney was itself upon a valuable consideration moving from Mrs. Everett herself. It states that she had paid debts and claims against the grantor out of her own funds, and had expended large sums of money in and about his support and maintenance, and also had agreed with him

that she would clothe, board and maintain him for the rest of his life. The power given to Doctor McChesney was not a naked one; it was coupled with a trust, and his heir-at-law was bound to convey the property to her on her request. The trust was for her benefit, to enable her to dispose of the property at will. No trust was declared as to the purchase-money of any sale to be made by her, but the trust was that, on request from her, the trustee should grant, bargain, sell, assign, transfer and convey the property to such person or persons as she might designate, and to and for such uses, purposes, estates and interests, and in such parts, shares and portions, form and manner as she should direct and appoint. She might have directed a conveyance to another person to her own use and it would have been valid. She had the same power to direct (as she did) a conveyance to herself for her own use. It is quite clear that the object of the grantor in the trust-deed was to give her full and absolute power over the property, and at the same time to protect her against any interference by her husband in the enjoyment or control of it or her dominion over it. The intention to execute the power is manifest, and it was the duty of the trustee to execute it. He was bound to convey on request. The fact that the request was not in writing obviously ought not to be allowed to defeat the conveyance. It is a mere formal defect.

The deed will be decreed to be a valid conveyance, and the injunction will be made perpetual. The complainant is entitled to costs.